UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| HIGHLAND TH, LLC and OVERSEAS LEASE GROUP, INC., | ) ) ) | |
| *Plaintiffs*, | ) ) | |
| *vs.* | ) ) | No. 2:15-cv-00196-JMS-DKL |
| CITY OF TERRE HAUTE, CITY OF TERRE HAUTE WASTEWATER UTILITIES, BOARD OF PUBLIC WORKS AND SAFETY, DUKE BENNETT, MARK THOMPSON, TERRE HAUTE DEWATERING COMPANY, LLC, and PLOCHER CONSTRUCTION COMPANY, INC., | ) ) ) ) ) ) ) | |
| *Defendants*. | ) | |

## ORDER

Presently pending in this case are the following motions: (1) a Motion to Dismiss Counts I-VI of the Amended Complaint filed by Defendants The City of Terre Haute (the "City"), The City of Terre Haute Wastewater Utilities ("THWW"), the Board of Public Works and Safety (the "Board"), Duke Bennett, and Mark Thompson (collectively, the "Terre Haute Defendants"), [Filing No. 32]; (2) a Motion to Dismiss Counts 7 and 8 of Plaintiffs' Amended Complaint filed by Defendant Terre Haute Dewatering Company, LLC ("THDC"), [Filing No. 58]; and (3) a Motion to Dismiss, Alternatively to Stay, and to Compel Arbitration filed by Defendant Plocher Construction Company, Inc. ("Plocher"), [Filing No. 60].

### I.
#### STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  "Specific facts are not necessary, the statement need only 'give

the defendant fair notice of what the…claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).

A 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  In reviewing the sufficiency of the complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff.  *See Active Disposal, Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011).  The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief.  *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011).  Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012).  This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Additionally, a plaintiff "can plead himself out of court by pleading facts that show that he has no legal claim." *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).  In other words, "[a]lthough normally a district court should not base a dismissal under Rule 12(b)(6) on its assessment of an affirmative defense, that rule does not apply when a party has included in its complaint facts that establish an impenetrable defense to its claims." *Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009) (citation and quotation omitted).

## II.
### BACKGROUND

The factual allegations in the Amended Complaint filed by Plaintiffs Highland TH, LLC ("Highland") and Overseas Lease Group, Inc. ("OLG"), which the Court must accept as true at this time, are as follows:

2

On July 15, 2014, the City, THWW, the Board, and Powerdyne Terre Haute Holdings LLC ("Powerdyne") signed a Purchase and Sale Agreement (the "Agreement") which provided that the City, THWW, and the Board agreed to: (1) deliver waste activated sludge and other biological material to Powerdyne for Powerdyne to process into diesel fuel; and (2) buy the diesel fuel back from Powerdyne. [Filing No. 28 at 2-3.] The Agreement was signed by Duke Bennett (the Mayor of Terre Haute) on behalf of the City, Matt Thompson (Director of THWW) on behalf of THWW, Robert Murray (President of the Board) on behalf of the Board, and Geoffrey Hirson (President of Powerdyne) on behalf of Powerdyne. [Filing No. 28-1 at 19.] Producing renewable diesel fuel involves removing the water from the waste activated sludge through centrifugation – a process known as "de-watering." [Filing No. 28 at 3.] The document provided that the City, THWW, and the Board would pay 240 consecutive monthly payments of $719,326.58 for de-watering services, for a total cost of $172 million over the life of the Agreement. [Filing No. 28 at 3.] It also provided that "since [the City, THWW, and the Board will be receiving significant revenues from remote cities for their [waste activated sludge] and other third parties for the sale of Renewable Fuel, provided that [Powerdyne] is not in default of this Agreement, [the City, THWW, and the Board] shall not have the right to use non appropriation of funds as a reason [for] termination of this Agreement or as a defense for nonpayment of any amounts due under this Agreement." [Filing No. 28-1 at 18.]

On May 15, 2014, Highland entered into a Lease Agreement with THWW (the "Lease") whereby Highland agreed to lease from THWW the facility where de-watering would occur. [Filing No. 28 at 3.][1] In July 2014, Plocher and Highland entered into an agreement whereby

---

[1] There is no explanation in the Amended Complaint or elsewhere as to why Highland and THWW entered into the Lease before the Agreement was signed. The Court also notes that Plaintiffs have not asserted any claims relating to the Lease.

Plocher would purchase, install, and test the de-watering facility equipment (the "Plocher Contract"). [Filing No. 28 at 6.]  At that time, Plocher knew of the existence of the Agreement. [Filing No. 28 at 6.]

On November 20, 2014, the parties to the Agreement agreed to assign the rights and delegate the obligations related to de-watering to Highland in a Partial Assignment and Delegation of Purchase and Sale Agreement (the "Assignment"). [Filing No. 28 at 3.]  Highland was owned by Powerdyne when it entered into the Lease and Assignment. [Filing No. 28 at 3.]  In late November 2014, OLG acquired Highland. [Filing No. 28 at 3.]

Also in November 2014, Mark Thompson, Director of THWW, spoke in person with a representative of OLG regarding the Agreement, and the commitment by the City, THWW, and the Board to purchase renewable diesel fuel. [Filing No. 28 at 4.]  Mr. Thompson stated that THWW had entered into waste water supply agreements with other cities, and that those agreements would provide a sufficient revenue stream to ensure that the City, THWW, and the Board could perform their obligations under the Agreement. [Filing No. 28 at 4.]  Mr. Thompson also provided spreadsheets to OLG representatives regarding the projected revenue. [Filing No. 28 at 4.]  The representations regarding the existence of waste water supply agreements with other cities were false. [Filing No. 28 at 9.]  Based on Mr. Thompson's representations, Highland drafted a pro forma to present to the Terre Haute City Council. [Filing No. 28 at 4.]

In reliance on Mr. Thompson's representations to the OLG representative, OLG acquired Highland and "made substantial investments to ensure that Highland could perform its obligations under the Assignment." [Filing No. 28 at 4.]  Additionally, in December 2014 OLG accepted assignment of Highland's obligations under the Plocher Contract. [Filing No. 28 at 4.]  For

example, OLG has insured the de-watering equipment from November 2014 through the present. [Filing No. 28 at 4.]

Highland was prepared to begin operating and maintaining services for the de-watering facility in late December 2014, but the City, THWW, and the Board never delivered waste activated sludge to the de-watering facility. [Filing No. 28 at 4-5.] Additionally, neither the City, THWW, nor the Board have ever made payments to Highland under the Agreement. [Filing No. 28 at 5.]

Beginning in November 2014 and through March 2015, Highland and OLG representatives had discussions with Mr. Bennett, the Mayor of Terre Haute, and Mr. Thompson regarding whether the City, THWW, and the Board would honor their contractual commitments. [Filing No. 28 at 5.] Mr. Bennett and Mr. Thompson repeatedly stated that the Agreement and the Assignment were valid contracts, and that the City, THWW, and the Board would honor their obligations under them. [Filing No. 28 at 5.] Additionally, at a Terre Haute City Council meeting in February 2015, Mr. Bennett stated that the Agreement was valid and did not need any further approvals. [Filing No. 28 at 5.] In the meantime, relying on Mr. Bennett's and Mr. Thompson's representations, OLG and Highland continued to incur costs to prepare and maintain the de-watering facility. [Filing No. 28 at 5.]

In March 2015, the City began negotiating with a different company, THDC, to provide de-watering services to the City. [Filing No. 28 at 5.] The City and THDC entered into a preliminary agreement on March 30, 2015 (the "THDC Agreement"), which required THDC to pay the City a deposit of $750,000 as a "prepayment of anticipated lease payments for the City's wastewater treatment facility." [Filing No. 28 at 5.] Mr. Bennett and Robert Murray, President of the Board, signed the THDC Agreement on behalf of the City, and Mr. Murray had the

understanding that the Board would later approve the THDC Agreement.  [Filing No. 28 at 5.]

When he learned that the THDC Agreement would not be presented to the Board for approval, Mr.

Murray resigned his position with the Board.  [Filing No. 28 at 6.]  Mr. Murray stated that he was

told the City needed the $750,000 payment from THDC under the THDC Agreement to meet its

payroll obligations, and that is why he signed the THDC Agreement.  [Filing No. 28 at 6.]

In May 2015, the City, THWW, and the Board repudiated the Agreement and the original

Assignment with Highland, claiming they were both invalid.  [Filing No. 28 at 6.]  A City attorney

has represented that the City cannot make payments on its bonds, and cannot pay for equipment

necessary for the operation of certain facilities.  [Filing No. 28 at 6.]  To date, the City, THWW,

and the Board have not delivered any waste activated sludge to Highland as provided in the

Assignment, have not made any payments due to Highland under the Assignment, and have

indicated that they do not think the Assignment creates any binding obligation upon them.  [Filing

No. 28 at 6.]  Plocher, which had contracted to provide equipment for the de-watering facility, sold

that equipment to the City for less than the market value of the equipment.  [Filing No. 28 at 6.]

Highland and OLG filed the original Complaint in this matter on June 9, 2015, [Filing No.

1], and the operative Amended Complaint on October 23, 2015, [Filing No. 28] in response to a

Motion to Dismiss filed by the Terre Haute Defendants, [Filing No. 16].   In the Amended

Complaint, Highland and OLG assert the following claims: (1) declaratory judgment against the

City, THWW, and the Board, declaring that the Agreement and Assignment are valid, legally

binding contracts; (2) breach of contract against the City, THWW, and the Board; (3) quantum

meruit against the City, THWW, and the Board; (4) fraud against Mr. Bennett and Mr. Thompson;

(5) appointment of a receiver against the City; (6) an injunction against the Terre Haute Defendants

prohibiting them from removing equipment from the de-watering facility; (7) tortious interference

with contract against Plocher and THDC; and (8) tortious interference with business relationships against Plocher and THDC.  [Filing No. 28 at 7-13.]  The Terre Haute Defendants have moved to dismiss Counts 1 through 6 of the Amended Complaint, [Filing No. 32], THDC has moved to dismiss Counts 7 and 8 of the Amended Complaint as against it, [Filing No. 58], and Plocher has moved to dismiss Counts 7 and 8 as against it or, in the alternative, to stay the litigation and compel Highland and OLG to arbitrate their claims against Plocher, [Filing No. 60].  The Court will discuss each motion in turn.

### III.
### THE TERRE HAUTE DEFENDANTS' MOTION TO DISMISS

In their Motion to Dismiss, the Terre Haute Defendants request that the Court dismiss Counts 1 through 6 of the Amended Complaint for failure to state a claim.

### A. Counts 1 and 2 – Declaratory Judgment That Agreement Is Valid and Enforceable, and Breach of the Agreement

In Count 1 Plaintiffs seek a declaration that the Agreement and the Assignment are valid and enforceable, and in Count 2 Plaintiffs assert that the City, THWW, and the Board breached the Agreement. [Filing No. 28 at 7-8.]  The Terre Haute Defendants seek dismissal of both Counts, arguing that the Agreement is void for three reasons: (1) it was entered into without an appropriation; (2) it was entered into without City Council or Sanitary District approval; and (3) it is an illegal investment contract.  [Filing No. 33 at 7-14.]  Accordingly, the Terre Haute Defendants argue, they cannot be liable for breaching the Agreement.  [Filing No. 33 at 7.]

#### 1.  Lack of an Appropriation

The Terre Haute Defendants assert that under Indiana law, "contracts executed by municipal officers who exceeded their authority or failed to follow the proscribed procedure are null and void."  [Filing No. 33 at 7.]  They also argue that when a private party contracts with a

municipality, it is the private party's obligation to ensure that the municipality has the authority to enter into the contract.  [Filing No. 33 at 7.]  The Terre Haute Defendants contend that Indiana law provides that a contract entered into without an appropriation to pay the debt incurred is void, and no prior appropriation was made here.  [Filing No. 33 at 8-9.]  The Terre Haute Defendants rely on the Amended Complaint's allegations to argue that the Agreement stated it would be funded through revenues from other cities who had contracted with THWW, but that those revenues never materialized.  [Filing No. 33 at 9-10.]  They emphasize the lengthy term of the Agreement and the sizable financial obligation it imposed on the City, and argue that the Non-Appropriation Clause in the Agreement is improper because it "attempt[s] to render a void contract valid…."  [Filing No. 33 at 11.]

In response, Plaintiffs argue that the Terre Haute Defendants have not pointed to any allegations in the Amended Complaint indicating that an appropriation was not made, and that the Terre Haute Defendants are prematurely arguing the merits of the claim.  [Filing No. 47 at 4.] Plaintiffs also assert that Indiana law provides that "cities and their executive agencies are presumed to act in conformance with statutory directive and within the limited powers granted by the Legislature."  [Filing No. 47 at 4.]

Under Indiana law,[2] a city must obtain an appropriation before entering into a contract that obligates the city to pay money.  Specifically, Indiana Code § 36-4-8-12(b) provides that "a city

---

[2] A federal court sitting in diversity must apply the choice of law provisions of the forum state. *Storie v. Randy's Auto Sales, LLC*, 589 F.3d 873, 879 (7th Cir. 2009) ("Because the district court's subject matter jurisdiction was based on diversity, the forum state's choice of law rules determine the applicable substantive law").  The parties (with the exception of Plocher, which relies on federal law for its arbitration-related arguments) rely upon Indiana law in analyzing Plaintiffs' claims.  [*See, e.g.*, Filing No. 33 at 7-24 (the Terre Haute Defendants citing Indiana law); Filing No. 47 at 2-11 (Plaintiffs citing Indiana law); Filing No. 59 at 3-11 (THDC citing Indiana law).] Absent a disagreement, the Court will apply Indiana law.  *Mass. Bay Ins. Co. v. Vic Koenig Leasing*, 136 F.3d 1116, 1120 (7th Cir. 1998); *Wood v. Mid-Valley, Inc.*, 942 F.2d 425, 426-27

department, officer, or employee may not obligate the city to any extent beyond the amount of money appropriated for that department, officer, or employee.  An obligation made in violation of this section is void."  Indiana courts have readily enforced this provision, invalidating contracts where there was not an appropriation to account for the city's financial commitment.  *See, e.g.*, *White River Conservancy Dist. v. Commonwealth Engineers, Inc.*, 575 N.E.2d 1011, 1015 (Ind. Ct. App. 1991) (acknowledging that contract a municipal district entered into would be "void and contrary to law" because district did not appropriate funds to cover its costs, but finding that statutory exception for contracts for certain services (which does not apply here) applied so contract was valid); *Board of Public Works of City of Hammond, Ind. v. L. Cosby Bernard and Co.*, 435 N.E.2d 575, 577 (Ind. Ct. App. 1982) (finding contract for architectural services that city entered into without appropriation was invalid, and stating "Ind. Code 36-4-8-12(b) is unambiguous in its condemnation of any attempt to bind a municipality in the absence of an appropriation").

In the Amended Complaint, Plaintiffs allege that Highland entered into the Agreement relying on Mr. Thompson's representations that agreements between THWW and other cities would provide "a sufficient revenue stream to ensure the City, [THWW], and the Board could perform the Agreement."  [Filing No. 28 at 4.]  Further, the Agreement – referred to extensively in, and attached as an exhibit to, the Amended Complaint[3] – provides that:

---

(7th Cir. 1991) ("The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits…. *Courts do not worry about conflict of laws unless the parties disagree on which state's law applies.* We are busy enough without creating issues that are unlikely to affect the outcome of the case (if they were likely to affect the outcome the parties would be likely to contest them)") (emphasis added).

[3] The Court can consider the Agreement in deciding the pending motions to dismiss because it is attached to the Amended Complaint as an exhibit, and referred to and discussed therein.  *See*

> The parties acknowledge that the Board of Public Works and Safety is part of the City of Terre Haute which is a governmental entity whose funds are subject to appropriation by its fiscal body.  Notwithstanding the foregoing, since [the City, THWW, and the Board] will be receiving significant revenues from remote cities for their [waste activated sludge] and other third parties for the sale of Renewable Fuel, provided that Supplier is not in default of this Agreement, [the City, THWW, and the Board] shall not have the right to use non appropriation of funds as a reason [for] termination of this Agreement or as a defense for nonpayment of any amounts due under this Agreement.

[Filing No. 28-1 at 18.]

These allegations indicate that the City's, THWW's, and the Board's obligations under the Agreement were being funded by revenue from contracts with other cities, and not from an appropriation.  Further, as Plaintiffs themselves allege, those revenues from other cities never materialized.  [*See* Filing No. 28 at 9 (Plaintiffs alleging that "Bennett and Thompson made a material misrepresentation of past or existing fact, including that other cities had entered into a waste water supply agreement with [THWW] and that the commitment from other cities provided a sufficient revenue stream to ensure the City, [THWW], and the Board could perform the Agreement," and "[t]hose representations were false").]

While Plaintiffs were not required to plead around the affirmative defense of lack of an appropriation, *see Sidney Hillman Health Center of Rochester v. Abbott Laboratories, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) ("a complaint need not anticipate and overcome affirmative defenses"), the Amended Complaint presents a different situation.  Here, Plaintiffs have affirmatively pled themselves out of any possibility of demonstrating that there was an

---

*Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) ("[W]hen a plaintiff attaches to the complaint a document that qualifies as a written instrument, and [the] complaint references and relies upon that document in asserting [the] claim, the contents of that document become part of the complaint and may be considered as such when the court decides a motion attacking the sufficiency of the complaint").

appropriation to cover the City's obligations under the Agreement by alleging: (1) that revenue for the City's obligations would come from the agreements with other cities related to sludge treatment; (2) that the Agreement provided this was the source for revenue; (3) that the revenue never materialized; and (4) that, consequently, the City, THWW, and the Board breached their obligations under the Agreement.  These facts, which the Court accepts as true at the motion to dismiss stage, show that the Agreement was invalid due to lack of an appropriation.  *See Atkins, 631 F.3d at 832* (plaintiff's claim is insufficient when it "plead[s] facts that show that [it] has no legal claim").  In other words, the Court is not finding that Plaintiffs have not adequately alleged there was an appropriation, but rather finds that Plaintiffs have affirmatively pled facts that establish there was no appropriation – a prerequisite for the Agreement's validity.

Additionally, Indiana law is emphatic that it is the duty of a private party contracting with a municipality to ensure that the municipality has taken the necessary steps to enter into the contract.  *See, e.g., Cablevision of Chicago v. Colby Cable Corp., 417 N.E.2d 348, 355-56 (Ind. Ct. App. 1981)* ("What is certain is that when our laws clearly limit the authority of government officials to act, or when the law clearly prescribes a procedure to be followed, private parties must carefully take note of that limitation or procedure before dealing with a governmental entity…. Similarly, when the public record contains information relevant to the individual's circumstance, he must seek it out"); *Lohrig v. Rochat, 169 N.E. 77, 81 (Ind. Ct. App. 1929)* ("It is well established that any person dealing with a municipality, or with municipal authorities…, is bound to know their limited authority to enter into contracts involving the expenditure of public funds…."). Consequently, Plaintiffs' allegations in the Amended Complaint that Highland relied on Mr. Thompson's statements in entering into the Agreement are of no moment, and do not excuse Highland or OLG from fulfilling the requirement of an appropriation.  Those allegations instead

establish that Highland took Mr. Thompson's word regarding the City obtaining revenue from agreements with other cities which, again, indicates that there was no appropriation.

The Agreement is invalid because Plaintiffs allege facts indicating that there was no appropriation related to the City's obligations under the Agreement, and the Terre Haute Defendants are entitled to dismissal of Count 1. However, the Court will briefly address an additional argument the Terre Haute Defendants raise in connection with the validity of the Agreement.[4]

### 2. Illegal Investment

The Terre Haute Defendants argue that the Agreement is also invalid because it is an investment contract that is prohibited by Indiana statute. [Filing No. 33 at 12-13.] They contend that, while Indiana law does allow cities to engage in certain types of investments, the Agreement does not fall within those exceptions. [Filing No. 33 at 13.]

Plaintiffs respond that "whether a statute has been violated is a question of fact that cannot be resolved at the motion to dismiss stage," and the argument that the Agreement is an illegal investment is not a valid basis for dismissal. [Filing No. 47 at 5.]

Indiana Code § 36-1-3-5 provides that "a unit[5] may exercise any power it has to the extent that the power: (1) is not expressly denied by the Indiana Constitution or by statute; and (2) is not expressly granted to another entity." § 36-1-3-8 enumerates certain powers that are exceptions to

---

[4] While the Terre Haute Defendants mention in a sub-heading in their brief that the Agreement is void because it was entered into without City Council or Sanitary District approval, they do not develop or otherwise discuss this argument. [See Filing No. 33 at 7.] Accordingly, the Court will not address it.

[5] Ind. Code § 36-1-2-23 defines "unit" as a "county, municipality, or township," and § 36-1-2-11 defines "municipality" as a "city or town."

the general grant of power, and one of those exceptions is "[t]he power to invest money, except as expressly granted by statute." Ind. Code § 36-1-3-8(11).

It does not appear that any Indiana courts have analyzed the parameters of § 36-1-3-8(11), but the Court finds that the Agreement constituted the City "investing money," and that the type of investment does not fall within any statutory exception.  In the securities context, a contract is considered an "investment contract" when there is: "(1) an investment of money, (2) in a common enterprise, (3) with the expectation of profits produced solely by the efforts of others." *Stenger v. R.H. Love Galleries, Inc.*, 741 F.2d 144, 146 (7th Cir. 1984).  The Court finds this definition instructive.  The Agreement involved the City paying a large sum of money (in excess of $172,000,000) to have sludge converted into diesel fuel, then required the City to buy the fuel produced from the sludge in an amount up to $590,000,000.  [*See* Filing No. 28 at 3; Filing No. 28-1.]  The City, according to Plaintiffs' own allegations, then intended to sell the fuel to third parties (other cities) at a profit, and to use that profit to satisfy its obligations under the Agreement. [*See* Filing No. 28 at 4.]  The Agreement, and Plaintiffs' allegations related to the Agreement, establish that the City was investing money with the expectation that it would turn a profit.  This, the Court finds, is "investing money," and is prohibited by Ind. Code § 36-1-3-8(11).

Because, according to Plaintiffs' own allegations, there was no appropriation for the City's obligations under the Agreement in violation of Ind. Code § 36-4-8-12(b), and because those allegations also indicate that the City was "investing money" when it entered into the Agreement in violation of Ind. Code § 36-1-3-8(11), the Agreement is invalid and unenforceable.  Since the Agreement is invalid and unenforceable, it follows that the Assignment (which Plaintiffs allege assigned the rights and duties under the Agreement, [Filing No. 28 at 3]), is similarly invalid and

unenforceable.  Accordingly, the Court grants the Terre Haute Defendants' Motion to Dismiss as it relates to Count 1 (declaratory judgment) and Count 2 (breach of contract).

### B.  Count 3 – Quantum Meruit

In their quantum meruit claim, Plaintiffs allege that even if the Agreement and Assignment are not binding, they "incurred significant expenses to install de-watering equipment and to hire an operations and maintenance manager for the de-watering facility," "[b]y completing that work, [they] conferred benefits upon the City, [THWW], and the Board," "OLG and Highland expected payment for undertaking that work, and the City, [THWW], and the Board knew of that expectation," and "[a]llowing the City, [THWW], and the Board to retain those benefits without restitution would be unjust." [Filing No. 28 at 8.]

The Terre Haute Defendants argue that Plaintiffs' quantum meruit claim fails because Plaintiffs seek to enforce an invalid contract, and the Agreement "involves the unauthorized expenditure of funds." [Filing No. 33 at 15.]  They also assert that Indiana courts reject equitable claims against the government when unauthorized actions have put public funds at risk.  [Filing No. 33 at 15.]

In their response, Plaintiffs contend that even if the Agreement is invalid, they can recover under a theory of quantum meruit.  [Filing No. 47 at 6.]  Plaintiffs argue that Indiana courts have not rejected equitable claims against the government, and that the cases the Terre Haute Defendants rely upon for that argument are inapposite.  [Filing No. 47 at 6-7.]

"Quantum meruit is an equitable doctrine that prevents unjust enrichment by permitting one to recover the value of the work performed or material furnished if used by another and if valuable."  *I.A.E., Inc. v. Hall*, --- N.E.3d ----, 2015 WL 9305725, *13 (Ind. Ct. App. 2015).  To recover under a theory of quantum meruit, "a plaintiff must establish that a measurable benefit has

been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust." *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408-09 (Ind. 1991).

In *Peoples State Bank v. Benton Tp. of Monroe County*, 28 N.E.3d 317 (Ind. Ct. App. 2015), the Indiana Court of Appeals set forth in more detail when a private party may recover from a municipality under a quasi-contract theory such as quantum meruit. It stated:

> To synthesize, municipal corporations must exercise their powers in strict compliance with statutory procedures and doctrines of estoppel or ratification will not validate a contract formed outside statutory parameters. However, in some instances, quantum meruit relief may be available to prevent the unfair retention of benefits. As an over-arching principle, it is clear that those who deal with taxpayer funds must be ever-vigilant to ascertain the public actor's authority.

*Id.* at 327 (citing *Cablevision of Chicago*, 417 N.E.2d at 355); *see also Cablevision*, 417 N.E.2d at 354 (holding that the general rule in Indiana is that "the public, whether it be a state or local governmental body, cannot be estopped by the unlawful acts of public officials," because "if laches, waiver or estoppel did apply against the public, a dishonest, incompetent or negligent public official could wreck the interests of the public") (citations and quotations omitted). The *Peoples State Bank* court remarked that "our courts have been particularly unsolicitous of estoppel and laches arguments in cases where the unauthorized acts of public officials on some level implicate government spending powers." *Peoples State Bank*, 28 N.E.3d at 326; *see also Laramore & Douglass, Inc. v. City of Anderson, Ind.*, 222 F.2d 480, 484 (7th Cir. 1955) ("If recovery is to be allowed on an implied contract against municipalities despite clear statutory restrictions upon the powers of its officers or boards to incur liabilities, then the protection of the statutory restrictions would, in a large measure, be swept away").

But "application of equitable doctrines when dealing with a public entity is not absolutely prohibited," and is allowed when the case does not "involve the unauthorized expenditure of

taxpayers' money…." *Peoples State Bank*, 28 N.E.2d at 327 (quotations and citations omitted). Here, however, the Agreement did involve significant taxpayer money. As Plaintiffs allege in the Amended Complaint, revenue from THWW's supposed agreements with other cities never materialized, which would leave taxpayer money as the only option. The Court finds that Plaintiffs cannot recover under a quantum meruit theory where the Agreement implicated taxpayer funds and where (as discussed above) the City, THWW, and the Board entered into the Agreement without obtaining the required appropriation as set forth under Indiana statute. The Court grants the Terre Haute Defendants' Motion to Dismiss Plaintiffs' quantum meruit claim.

### C. Count 4 – Fraud Claim

Plaintiffs allege in connection with their fraud claim that Mr. Bennett and Mr. Thompson knowingly or recklessly made material misrepresentations, including that other cities had entered into waste water supply contracts with THWW, and that those contracts would provide a sufficient revenue stream to ensure the City, THWW, and the Board could perform their obligations under the Agreement. [Filing No. 28 at 9.] Plaintiffs also allege that Mr. Bennett and Mr. Thompson represented between November 2014 and March 2015 that the City, THWW, and the Board considered the Agreement and Assignment to be binding contracts, and that they intended to deceive OLG and Highland when they made those representations. [Filing No. 28 at 9.] Plaintiffs allege that they detrimentally relied on the representations "by expending substantial money to prepare to perform the de-watering operations." [Filing No. 28 at 9.]

The Terre Haute Defendants argue that Plaintiffs' fraud claim should be dismissed because it does not allege the necessary prerequisites to suing Mr. Bennett and Mr. Thompson personally under the Indiana Tort Claims Act, including that they "acted criminally, that they were clearly outside the bounds of their employment, that they acted maliciously, willfully or wantonly, or that

16

they made misrepresentations to somehow benefit themselves." [Filing No. 33 at 18.] Additionally, the Terre Haute Defendants argue that the statements Plaintiffs focus on were made within the scope of Mr. Bennett's and Mr. Thompson's employment, so they cannot face personal liability. [Filing No. 33 at 18-19.] The Terre Haute Defendants also argue that the statements Plaintiffs base their fraud claim on do not constitute fraud as a matter of law because they are either misstatements of the law or opinions. [Filing No. 33 at 19-20.] Finally, the Terre Haute Defendants argue that Plaintiffs' reliance on the statements was unreasonable, and that it is "outlandish" that Highland would have "entered into a $172,000,000 contract based on the legal advice of a mayor and the director of a sewer utility, neither of which has any legal training and who are on the other side of the transaction." [Filing No. 33 at 20.]

In response, Plaintiffs argue that they have alleged that OLG was induced to acquire Highland based on representations that Mr. Bennett and Mr. Thompson knew were false when made. [Filing No. 47 at 7-8.] They assert that Mr. Bennett's and Mr. Thompson's affirmations of the Agreement were not statements of law, and that they have alleged that the affirmations were "calculated to induce Defendants to invest in the de-watering facility to prepare it for operation, but Defendants intended THDC to operate the facility and reap its profits at Plaintiffs' expense." [Filing No. 47 at 8.] Plaintiffs also argue that a misstatement of the law can form the basis of a fraud claim "if an attorney, or someone professing knowledge in legal matters, makes the misstatement." [Filing No. 47 at 8.] Finally, Plaintiffs contend that the statements they focus on were not statements of opinion, but rather statements of fact. [Filing No. 47 at 8-9.]

While they acknowledge it, Plaintiffs provide no response to the Terre Haute Defendants' argument that they failed to allege any of the prerequisites for personal liability under the Indiana

Tort Claims Act.  [*See* Filing No. 47.]  Because that issue is potentially dispositive, the Court

addresses it first.  Section 34-13-3-5 of the Indiana Tort Claims Act provides:

> (a) Civil actions relating to acts taken by a board, a committee, a commission, an authority, or another instrumentality of a governmental entity may be brought only against the board, the committee, the commission, the authority, or the other instrumentality of a governmental entity.   A member of a board, a committee, a commission, an authority, or another instrumentality of a governmental entity may not be named as a party in a civil suit that concerns the acts taken by a board, a committee, a commission, an authority, or another instrumentality of a governmental entity where the member was acting within the scope of the member's employment.  For the purposes of this subsection, a member of a board, a committee, a commission, an authority, or another instrumentality of a governmental entity is acting within the scope of the member's employment when the member acts as a member of the board, committee, commission, authority, or other instrumentality.

*          *          *

> (c) A lawsuit filed against an employee personally must allege that an act or omission of the employee that causes a loss is:
>
>   (1) criminal;
>
>   (2) clearly outside the scope of the employee's employment;
>
>   (3) malicious;
>
>   (4) willful and wanton; or
>
>   (5) calculated to benefit the employee personally.

Ind. Code § 34-13-3-5.

Plaintiffs do not argue that their Amended Complaint contains any of the allegations

required by § 34-13-3-5(c) and, as noted, do not address the Terre Haute Defendants' argument

relating to § 34-13-3-5 at all.  Accordingly, Plaintiffs have waived any argument contrary to the

Terre Haute Defendants' assertion that they have failed to allege facts in conformance with the

prerequisites of § 34-13-3-5.  *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010).  The

lack of counter-argument may well be a tacit concession, because the Amended Complaint does

not contain any allegation that Mr. Bennett or Mr. Thompson engaged in a criminal act, that the act was clearly outside the scope of their employment, that the act was malicious, that the act was willful and wanton, or that the act was calculated to benefit the employee personally.  Accordingly, Plaintiffs' fraud claim against Mr. Bennett and Mr. Thompson is dismissed for failure to state a claim.[6]

### D.  Count 5 – Appointment of a Receiver

Plaintiffs request the appointment of a receiver in Count 5 of the Amended Complaint, alleging that "[a]ttorneys and representatives of the City have indicated that the city has difficulty meeting its payroll obligations, cannot meet its bond payment obligations, and cannot pay for certain equipment needed to operate its facilities," that "the City is likely insolvent," and that the de-watering facility equipment "may be acquired by the City for below-market value, and the City may remove that equipment to be used by a third party."  [Filing No. 28 at 10.]

The Terre Haute Defendants assert that Indiana law limits the circumstances in which a receiver can be appointed, and those circumstances do not exist here.  [Filing No. 33 at 21-22.] They also argue that they have not located any case law where an Indiana court has appointed a receiver over a municipality under Indiana statute.  [Filing No. 33 at 22.]  The Terre Haute Defendants also argue that "Highland directs this Court to no authority for the proposition that a court has the power to displace duly elected officials of the executive branch and replace them with a court-appointed receiver based on nothing more than unsubstantiated allegations of insolvency."  [Filing No. 33 at 22.]

---

[6] The Court need not, and will not, address the Terre Haute Defendants' additional arguments regarding the nature of the misstatements Mr. Bennett and Mr. Thompson allegedly made.

In response, Plaintiffs argue that the City is a "municipal corporation," and thus the Indiana statute allowing for a receiver to be appointed by a court when a corporation is insolvent or in imminent danger of insolvency applies here.  [Filing No. 47 at 9.]  Plaintiffs also point to a general subsection of the Indiana statute relating to appointment of a receiver, which allows appointment to prevent irreparable harm.  [Filing No. 47 at 10.]

Indiana Code § 32-30-5-1 sets forth the circumstances in which a court may appoint a receiver, and Plaintiffs rely on two subsections of the statute:

A receiver may be appointed by the court in the following cases:

(5) When a corporation:

(A) has been dissolved;

(B) is insolvent;

(C) is in imminent danger of insolvency; or

(D) has forfeited its corporate rights.

*　　　　　*　　　　　*

(7) In other cases as may be provided by law or where, in the discretion of the court, it may be necessary to secure ample justice to the parties.

Under Indiana law, the appointment of a receiver is "an extraordinary equitable remedy," which "will be withheld until it is made to appear that the applicant therefor is without a legal remedy 'as complete, efficient and effective as that in equity.'"  *Miller v. St. Louis Union Trust Co.*, 178 N.E. 1, 3 (Ind. 1931); *see also Schrenker v. State*, 919 N.E.2d 1188, 1192 (Ind. Ct. App. 2010) ("The appointment of a receiver is a statutorily granted authority that must be strictly construed, and it cannot be sustained unless proper statutory grounds for the appointment are sufficiently shown.  The power to appoint a receiver should be exercised only when it is clear that no other full and adequate remedy exists whereby justice between the parties may be affected and

a wrong prevented, and only in a clear case of extreme necessity.  Accordingly, the standard by which the appointment can be justified is exceptionally stringent") (citations and quotations omitted).

Subsection (5) of § 32-30-5-1 applies only to "corporations," and Plaintiffs' argument that the City is a "municipal corporation" and therefore covered by subsection (5) is unavailing.  While Plaintiffs point to an Indiana statute that defines "municipal corporation," [*see* Filing No. 47 at 9-10 (discussing Ind. Code § 36-1-2-10)], they do not cite any legal authority for the proposition that § 32-30-5-1's use of the term "corporation" includes "municipal corporations."

Additionally, Plaintiffs have not alleged facts sufficient to satisfy the requirements of subsection (5) in any event.  Their vague allegations that attorneys and City representatives "have indicated that the City has difficulty meeting its payroll obligations, cannot meet its bond payment obligations, and cannot pay for certain equipment needed to operate its facilities" so "[t]herefore, the City is likely insolvent" are simply not enough to plausibly state a claim under § 32-30-5-1 that a "corporation" is insolvent or in imminent danger of insolvency.  [*See* Filing No. 28 at 10.]

These allegations also do not support a claim seeking appointment of a receiver under subsection (7) of § 32-30-5-1.  The Court has already found that Plaintiffs' allegations do not state a claim for recovery under a breach of contract theory, or under a theory of quantum meruit. Without allegations stating a plausible claim to entitlement of relief, Plaintiffs have not stated a plausible claim for appointment of a receiver "to secure ample justice."  Ind. Code § 32-30-5-1(7). The Court grants the Terre Haute Defendants' Motion to Dismiss as it relates to Count 5.

### E.  Count 6 – Injunction

Plaintiffs allege that they are entitled to an injunction prohibiting the Terre Haute Defendants from removing equipment from the de-watering facility because the equipment is

needed by Highland to perform its obligations under the Agreement, may be acquired by the City for below-market value, and the City may remove the equipment for use by a third party. [Filing No. 28 at 10-11.]  Highland alleges that it will suffer irreparable harm absent an injunction. [Filing No. 28 at 10.]

The Terre Haute Defendants argue that Plaintiffs' injunction claim should be dismissed because Highland has not alleged that it owns or has an interest in the equipment. [Filing No. 33 at 23.]  Additionally, the Terre Haute Defendants assert that even if Highland has an interest in the equipment, it has not shown that monetary damages "would not fully reimburse it for any harm caused by the equipment's sale or removal."  [Filing No. 33 at 23.]

Plaintiffs respond that their allegations that they need the equipment at the de-watering facility to perform their obligations under the Agreement and Assignment, and that if the City removes the equipment Highland will suffer irreparable harm, are enough to state a claim for injunctive relief against the Terre Haute Defendants. [Filing No. 47 at 11.]

"To obtain a preliminary injunction, the moving party must show that its case has 'some likelihood of success on the merits' and that it has 'no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied.'" *Stuller, Inc. v. Steak N Shake Enters., Inc.*, 695 F.3d 676, 678 (7th Cir. 2012) (quoting *Ezell v. City of Chi.*, 651 F.3d 684, 694 (7th Cir. 2011)).  "If the moving party meets these threshold requirements, the district court 'must consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied.'" *Stuller*, 695 F.3d at 678 (quoting *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001)).  "The district court must also consider the public interest in granting or denying an injunction." *Stuller*, 695 F.3d at 678.

The only harm Plaintiffs allege they will suffer absent an injunction is that, without the equipment, they will not be able to perform their obligations under the Agreement and the Assignment.  Because the Court has already found that the Agreement and the Assignment are invalid, Plaintiffs have no obligations to satisfy and, therefore, will not suffer any harm if the equipment is sold.  Based on their own allegations supporting their injunction claim – which rely upon the existence of obligations under the Agreement and Assignment – Plaintiffs have not stated a plausible claim for entitlement to an injunction.

In sum, the Terre Haute Defendants' Motion to Dismiss is granted because: (1) the Agreement and Assignment are not valid since, based on Plaintiffs' own allegations, there was no appropriation to cover the City's obligations and the Agreement is an investment contract in contravention of Indiana law; (2) Plaintiffs cannot recover under a theory of quantum meruit based on the circumstances alleged in the Amended Complaint; (3) Plaintiffs have not alleged the necessary circumstances to state a claim for fraud against Mr. Bennett and Mr. Thompson in their individual capacities; (4) Plaintiffs have not alleged facts which lead to a plausible claim for appointment of a receiver for the City; and (5) Plaintiffs have not alleged facts which plausibly indicate an entitlement to an injunction related to the de-watering equipment.

## IV.
### THDC'S MOTION TO DISMISS

THDC argues in its Motion to Dismiss, [Filing No. 58], that Plaintiffs' claims against it – for tortious interference with contract and tortious interference with business relationships – should be dismissed for failure to state a claim.

### A.  Tortious Interference With Contract

Plaintiffs allege in the Amended Complaint that THDC and the City entered into the THDC Agreement "with knowledge that the City and [THWW] had a valid contract for the same services

23

with Highland," that THDC "intentionally and without justification induced the City's, [THWW's], and the Board's breach of its contract with Highland," and that the intentional interference has caused Highland to suffer damages.  [Filing No. 28 at 12.]

THDC argues that Plaintiffs' allegations are vague and conclusory, and also that competition is a legitimate interest that establishes justification for a tortious interference claim. [Filing No. 59 at 7-8.]  THDC also argues that Plaintiffs have pled themselves out of their tortious interference with contract claim because they allege that they are in competition with THDC to provide de-watering services.  [Filing No. 59 at 8-9.]

Plaintiffs respond that they have sufficiently pled a lack of justification for THDC's actions, including asserting that THDC acted unfairly or unreasonably under the circumstances. [Filing No. 69 at 3-4.]  Plaintiffs focus on their allegations that the total revenue under the Agreement was over $172 million, and that they had made "substantial investments in the de-watering operation and were ready to begin operating the facility on or around December 20, 2014."  [Filing No. 69 at 4.]

Under Indiana law, the elements of a claim for tortious interference with a contract are: "(1) the existence of a valid and enforceable contract; (2) defendant's knowledge of the existence of the contract; (3) defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from defendant's wrongful inducement of the breach." *Melton v. Ousley*, 925 N.E.2d 430, 440 (Ind. Ct. App. 2010) (citing *Levee v. Beeching*, 729 N.E.2d 215, 221 (Ind. Ct. App. 2000)).  In order to adequately allege the absence of justification, thus satisfying the fourth element for establishing tortious interference, a plaintiff must do more than merely assert that the defendant's conduct was unjustified.  *Morgan Asset Holding Corp. v. CoBank ACB*, 736 N.E.2d 1268, 1272 (Ind. Ct. App. 2000) (holding a "conclusory statement" that

24

a defendant lacked justification for its alleged interference was insufficient to establish that such interference was unjustified and therefore tortious). "[T]he existence of a legitimate reason for the defendant's actions provides the necessary justification to avoid liability." *Id.* (citing *Winkler v. V.G. Reed & Sons, Inc.*, 619 N.E.2d 597, 600-01 (Ind. Ct. App. 1993)).

Plaintiffs' tortious interference with contract claim against THDC fails at the outset because, as discussed above, the Agreement between the City and Highland was invalid since there was no appropriation to account for the City's obligations, and because it is an investment contract that it prohibited by Indiana statute. Accordingly, Plaintiffs' tortious interference claim does not state a claim upon which relief can be granted.

Additionally, and in any event, Plaintiffs have pled themselves out of asserting a tortious interference claim. Specifically, Plaintiffs allege that THDC entered into a contract with the City to perform "the same services" Highland had agreed to perform for the City. [Filing No. 28 at 12.] These allegations constitute an acknowledgment by Plaintiffs that Highland and THDC perform the same services, and contracted with the City to further their own legitimate business interests. Under Indiana law, THDC's alleged actions relating to contracting with the City to perform de-watering services were simply part of business competition, which constitutes justification for purposes of a tortious interference claim. *See Harvest Life Ins. Co. v. Getche*, 701 N.E.2d 871, 877 (Ind. Ct. App. 1998) (relying upon Restatement (Second) of Torts § 768 (1977) in finding that tortious interference claim failed because defendant's justification for actions was business competition, and stating "[o]ne's privilege to engage in business and to compete with others implies a privilege to induce third persons to do their business with him rather than with his competitors. In order not to hamper competition unduly, the rule stated in [Section 768] entitles one not only to seek to divert business from his competitors generally but also from a particular

competitor.  And he may seek to do so directly by express inducement as well as indirectly by attractive offers of his own goods or services") (quoting Comment b to Restatement (Second) of Torts § 768 (1977)).

Plaintiffs' tortious interference claim against THDC fails first and foremost because there was not a valid contract between Highland and the City, with which THDC could interfere.  Also, because Plaintiffs have pled that THDC was engaged in the same business as Highland, and contracted with the City to provide the same services Highland had agreed to perform, Plaintiffs' allegations indicate that THDC did not act exclusively to injure Highland but rather to further its own business purposes.  Thus, Highland has pled itself out of Court with respect to its tortious interference with contract claim against THDC.

### B.  Tortious Interference With Business Relationships

Plaintiffs' allegations in connection with their tortious interference with business relationships claim are very similar to their allegations in their tortious interference with contract claim.  They assert that THDC "intentionally and without justification interfered with [the business relationship between the City and Highland] when it contracted with the City, [THWW], and the Board to provide de-watering services to the City," and that this interference has caused damages. [Filing No. 28 at 13.]

THDC argues that the tortious interference with business relationships claim should be dismissed because Plaintiffs do not allege any illegal act committed by THDC.  [Filing No. 59 at 10-11.]

Plaintiffs respond that THDC is improperly attempting to force them to argue the merits of their claims at the motion to dismiss stage of the litigation.  [Filing No. 69 at 7-8.]

26

The elements of a tortious interference with business relationships claim are similar to those of a tortious interference with contract claim: "the existence of a valid business relationship; the defendant's knowledge of the existence of the relationship; the defendant's intentional interference in the relationship; the absence of any justification; and, damages resulting from the defendant's interference." *Comfax Corp. v. North American Van Lines, Inc.*, 587 N.E.2d 118, 124 (Ind. Ct. App. 1992) (citing *Flintridge Station Associates v. American Fletcher Mortgage  Co.*, 761 F.2d 434, 440 (7th Cir. 1985)).  A tortious interference with business relationships claim does not require the existence of a contractual relationship.  *Flintridge Station Associates*, 761 F.2d at 440.  It does, however, require "some independent illegal action."  *Rice v. Hulsey*, 829 N.E.2d 87, 91 (Ind. Ct. App. 2005) (quoting *Brazauskas v. Fort Wayne-South Bend Diocese, Inc.*, 796 N.E.2d 286, 291 (Ind. 2003)).

Plaintiffs' tortious interference with business relationships claim also fails at the motion to dismiss stage because Plaintiffs have pled themselves out of the claim.  As with the tortious interference with contract claim, Plaintiffs must plead that THDC's acts were unjustified.  Because their allegations indicate that THDC was in the business of performing de-watering services, and entered into a contract with the City to perform those services – the same services Highland had agreed to provide to the City – Plaintiffs' own allegations indicate that THDC's actions were justified because they were competing with Highland for de-watering business.  Plaintiffs' tortious interference with business relationships claim against THDC is dismissed.

To re-cap, the Court grants THDC's Motion to Dismiss, [Filing No. 58], because: (1) Plaintiffs' tortious interference with contract claim fails since there was not a valid contract between the City and Highland; and (2) Plaintiffs have pled themselves out of both their tortious interference with contract and tortious interference with business relationships claims since their

own allegations indicate that THDC acted as a competitor of Highland's, and its actions were justified because it was acting to further its own business interests.

### V.
### PLOCHER'S MOTION TO DISMISS, ALTERNATIVELY TO STAY, AND TO COMPEL ARBITRATION

Plaintiffs allege tortious interference with contract and tortious interference with business relationships claims against Plocher, claiming that Plocher contracted with (or had a business relationship with) Highland to purchase, install, and test the de-watering equipment; knew of the Agreement between Highland and the City, THWW, and the Board; and then sold the equipment that it provided to Highland to the City.  [Filing No. 28 at 11-12.]  Plaintiffs allege that Plocher's sale of the equipment to the City "without justification" intentionally induced the City's, THWW's, and the Board's breach of the Agreement.  [Filing No. 28 at 11.]

Plocher has moved to dismiss or stay Plaintiffs' claims for tortious interference with contract and tortious interference with business relationships, arguing that OLG agreed to arbitrate those claims and is, in fact, arbitrating them concurrently with this litigation.  [Filing No. 61 at 4-5.]  Plocher argues that the tortious interference claims arise from the Plocher Contract because the claims are based on Plocher's sale of the de-watering equipment to the City, and "Plocher would not have had any equipment to sell to the City but for Plocher's building of the equipment under the [Plocher Contract]…."  [Filing No. 61 at 4-5.]  Plocher also asserts that OLG's allegations in the arbitration that Plocher's alleged tortious interference caused the City not to pay OLG, which in turn caused OLG not to pay Plocher, indicate that the claims are "in connection with" OLG's performance under the Plocher Contract.  [Filing No. 61 at 5.]

Plaintiffs respond that their tortious interference claims relate to the Agreement and do not arise from the Plocher Contract (which contains the arbitration provision).  [Filing No. 70 at 3.]  Accordingly, Plaintiffs argue, the claims are not subject to the Plocher Contract's arbitration

28

provision.  [Filing No. 70 at 3-4.]  Plaintiffs also state that they "do not intend to pursue [their] tortious interference claims in both this case and the Plocher Arbitration," and that "OLG intends to dismiss its tortious interference claim in the Plocher Arbitration if this Court denies Plocher's Motion to Dismiss."  [Filing No. 70 at 4.]

Under circumstances such as those present here, the Seventh Circuit Court of Appeals considers a motion to dismiss based on an existing arbitration agreement to be a motion to dismiss under Fed. R. Civ. P. 12(b)(3) for improper venue.  *Faulkenberg v. CB Tax Franchise Systems, LP*, 637 F.3d 801, 807 (7th Cir. 2011).  Accordingly, the Court can consider material outside of the Amended Complaint, such as the full Plocher Contract and documents filed in the pending arbitration between OLG and Plocher, in considering Plocher's motion.  *See Strategic Mgmt. Harmony, LLC v. Enhanced Bus. Reporting Consortium, Inc.*, 2007 WL 2316484, *5 (S.D. Ind. 2007)* (court may consider material outside the pleadings in deciding motion to dismiss brought under Fed. R. Civ. P. 12(b)(3)).

The Federal Arbitration Act, 9 U.S.C. § 1, *et seq*. ("FAA") provides that arbitration provisions in commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "[F]ederal law places arbitration clauses on equal footing with other contracts, not above them."  *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 740 (7th Cir. 2010).  While parties seeking to compel arbitration often cite a federal "policy" in favor of arbitration, any preference for arbitration is "reserved for the interpretation of the scope of a valid arbitration clause."  *Id.*

"An agreement to arbitrate is treated like any other contract."  *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir. 1997) (citing *Kresock v. Bankers Trust Co.*, 21 F.3d 176, 178 (7th Cir. 1994)).  Arbitration will only be compelled where there is a contract

providing so. *Matthews v. Rollins Hudig Hall Co.*, 72 F.3d 50, 53 (7th Cir. 1995). "[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *see also General Ass'n of Regular Baptist Churches v. Scott*, 549 Fed. Appx. 531, 533 (7th Cir. 2013).

In order to determine whether a valid arbitration agreement exists, a federal court looks to the state law governing the formation of the contract. *Baumann v. Finish Line, Inc.*, 421 Fed. Appx. 632, 634 (7th Cir. 2011) ("An agreement to arbitrate is treated like any other contract, and we look to the state law that governs the formation of contracts to determine if there was a valid agreement") (citing *Tinder v. Pinkerton Security*, 305 F.3d 728, 733 (7th Cir. 2002)); *see also Gibson*, 121 F.3d at 1130; *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).

The Plocher Contract provides that:

> All claims or disputes arising from or in connection with the Contract or performance under it, including claims and disputes over whether the Contract is in effect and enforceable, which are not resolved by negotiation (and mediation if the Agreement requires it), shall be finally resolved by…[a]rbitration administered by and in accordance with the Commercial Industry Arbitration Rules of the American Arbitration Association, in effect as of the date of the Agreement….

[Filing No. 61-1 at 11.]

Arbitration provisions contemplating all claims "arising out of or relating to" an agreement between parties – which the Court equates with the "arising from or in connection with" language used in the Plocher Contract – have been interpreted very broadly, creating a presumption of arbitrability. *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 910 (7th Cir. 1999). In fact, the Indiana Supreme Court has described such provisions as having "all-encompassing language." *National Wine and Spirts, Inc. v. Ernst & Young, LLP*, 976 N.E.2d 699, 706 (Ind. 2012). It is well established that any doubt concerning the scope of the arbitration clause is

resolved in favor of arbitration as a matter of federal law. *Gore v. Alltel Communications, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).  The phrase "arising out of" reaches "all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se." *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993).

Here, Plaintiffs allege that Highland and Plocher entered into the Plocher Contract, which provided that Plocher would purchase, install, and test equipment at the de-watering plant.  [Filing No. 28 at 6.]  Plaintiffs allege in the tortious interference claims that Plocher sold the de-watering equipment to the City, even though it knew that Highland and the City, THWW, and the Board had entered into the Agreement, and that the sale of the equipment caused the City, THWW, and the Board to breach the Agreement.  The Court finds that the tortious interference claims "arise from" or are "in connection with" the Plocher Contract for purposes of application of the arbitration provision.  The claims originate from the relationship between Plocher and Highland set forth in the Plocher Contract.  Without that relationship, there would have been no equipment for Plocher to sell to the City, thus allegedly causing the City, THWW, and the Board to breach the Agreement with Highland.  Accordingly, the tortious interference claims "arise from" or are "in connection with" the Plocher Contract, and they must be arbitrated.

The Court also notes that Plocher has already initiated an arbitration proceeding against OLG (who assumed Highland's obligations under the Plocher Contract), [Filing No. 61-5], and OLG has asserted a counterclaim for tortious interference against Plocher in the arbitration, [Filing No. 61-6].  This indicates that OLG itself viewed tortious interference claims as related to the Plocher Contract.

31

Because the tortious interference claims arise from, or are in connection with, the Plocher Contract, the Court finds that those claims are subject to the arbitration clause in the Plocher Contract and must be arbitrated.  Accordingly, the Court grants Plocher's Motion to Dismiss, Alternatively to Stay, and To Compel Arbitration to the extent that Plaintiffs' claims against Plocher are dismissed for improper venue.

## VI.
### CONCLUSION

Both Indiana statute and case law make it unequivocally clear that a private party seeking to contract with a governmental entity is under a duty to ensure that any such contract complies with Indiana statute, even if the contract is signed by one or more elected officials.  If the contract is sought to be executed without compliance with statutory requirements, it is the private contracting entity that will bear the risk of loss, not the taxpayers.

For the foregoing reasons, the Court:

- **GRANTS** the Terre Haute Defendants' Motion to Dismiss Counts I – VI of the Amended Complaint, [Filing No. 32], and **DISMISSES WITH PREJUDICE** all claims against the Terre Haute Defendants;

- **GRANTS** THDC's Motion to Dismiss Counts 7 and 8 of Plaintiffs' Amended Complaint, [Filing No. 58], and **DISMISSES WITH PREJUDICE** all claims against THDC; and

- **GRANTS** Plocher's Motion to Dismiss, Alternatively to Stay, and to Compel Arbitration, [Filing No. 60], and **DISMISSSES WITH PREJUDICE** all claims against Plocher.

Final judgment shall issue accordingly.

The Court notes that it is dismissing Plaintiffs' claims with prejudice.  Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), a plaintiff may amend its complaint as a matter of course in response to a motion to dismiss. *Brown v. Bowman*, 2011 WL 1296274, *16 (N.D. Ind. 2011). The 2009 notes to that rule emphasize that this amendment "will force the pleader to consider

carefully and promptly the wisdom of amending to meet the arguments in the motion.   A responsive amendment may avoid the need to decide the motion or reduce the number of issues to be decided, and will expedite determination of issues that otherwise might be raised seriatim."

Plaintiffs amended their Complaint once in response to the Terre Haute Defendants' first motion to dismiss, and then chose not to exercise their right to amend again as a matter of course pursuant to Rule 15(a)(1)(B) in response to the three current Motions to Dismiss but, instead, chose to brief the motions and adjudicate the issues.   The Court is not required to give Plaintiffs another chance to plead their claims because they have already had multiple opportunities to cure deficiencies in their pleadings.  *See Emery v. American General Finance, Inc.*, 134 F.3d at 1321, 1323 (7th Cir. 1998).   Further, Plaintiffs have not given any indication that they could, in fact, successfully amend their complaint to cure the defects identified above, even if given the opportunity to do so.   Considering the procedural history of this case, particularly the fact that Plaintiffs have already had the opportunity to re-plead their allegations, the Court, in its discretion, dismisses Plaintiffs' claims with prejudice.

Date:  May 17, 2016

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**<u>Distribution via ECF only to all counsel of record</u>**

33