UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| HIGHLAND TH, LLC and OVERSEAS LEASE GROUP, INC., | ) ) ) |
| *Plaintiffs*, | ) ) |
| *vs.* | ) ) No. 2:15-cv-00196-JMS-DKL |
| CITY OF TERRE HAUTE, CITY OF TERRE HAUTE WASTEWATER UTILITIES, BOARD OF PUBLIC WORKS AND SAFETY, DUKE BENNETT, MARK THOMPSON, TERRE HAUTE DEWATERING COMPANY, LLC, and PLOCHER CONSTRUCTION COMPANY, INC., | ) ) ) ) ) ) ) ) |
| *Defendants*. | ) |

## ORDER

Presently pending in this case is a Motion to Alter or Amend the Judgment filed by Plaintiffs Highland TH, LLC ("Highland") and Overseas Lease Group, Inc. ("OLG"). [Filing No. 83.]

## I.
### BACKGROUND[1]

On July 15, 2014, the City of Terre Haute (the "City"), Terre Haute Wastewater Utilities ("THWW"), the Board of Public Works and Safety (the "Board"), and Powerdyne Terre Haute Holdings LLC ("Powerdyne") signed a Purchase and Sale Agreement (the "Agreement") which provided that the City, THWW, and the Board agreed to: (1) deliver waste activated sludge and other biological material to Powerdyne for Powerdyne to process into diesel fuel; and (2) buy the diesel fuel back from Powerdyne. [Filing No. 28 at 2-3.] The Agreement was signed by Duke

---

[1] These background facts are taken largely from the Court's May 17, 2016 Order. [Filing No. 81.]

Bennett (the Mayor of Terre Haute) on behalf of the City, Matt Thompson (Director of THWW) on behalf of THWW, Robert Murray (President of the Board) on behalf of the Board, and Geoffrey Hirson (President of Powerdyne) on behalf of Powerdyne.  [Filing No. 28-1 at 19.]  Producing renewable diesel fuel involves removing the water from the waste activated sludge through centrifugation – a process known as "de-watering."  [Filing No. 28 at 3.]  The document provided that the City, THWW, and the Board would pay 240 consecutive monthly payments of $719,326.58 for de-watering services, for a total cost of $172 million over the life of the Agreement.  [Filing No. 28 at 3.]  It also provided that "since [the City, THWW, and the Board will be receiving significant revenues from remote cities for their [waste activated sludge] and other third parties for the sale of Renewable Fuel, provided that [Powerdyne] is not in default of this Agreement, [the City, THWW, and the Board] shall not have the right to use non appropriation of funds as a reason [for] termination of this Agreement or as a defense for nonpayment of any amounts due under this Agreement."  [Filing No. 28-1 at 18.]

On May 15, 2014, Highland entered into a Lease Agreement with THWW (the "Lease") whereby Highland agreed to lease from THWW the facility where de-watering would occur. [Filing No. 28 at 3.][2]  In July 2014, Plocher Construction Company, Inc. ("Plocher") and Highland entered into an agreement whereby Plocher would purchase, install, and test the de-watering facility equipment (the "Plocher Contract").  [Filing No. 28 at 6.]  At that time, Plocher knew of the existence of the Agreement.  [Filing No. 28 at 6.]

On November 20, 2014, the parties to the Agreement agreed to assign the rights and delegate the obligations related to de-watering to Highland in a Partial Assignment and Delegation

---

[2] There is no explanation in the Amended Complaint or elsewhere as to why Highland and THWW entered into the Lease before the Agreement was signed.  The Court also notes that Plaintiffs have not asserted any claims relating to the Lease.

2

of Purchase and Sale Agreement (the "<u>Assignment</u>"). [Filing No. 28 at 3.] Highland was owned by Powerdyne when it entered into the Lease and Assignment. [Filing No. 28 at 3.] In late November 2014, OLG acquired Highland. [Filing No. 28 at 3.]

Also in November 2014, Mark Thompson, Director of THWW, spoke in person with a representative of OLG regarding the Agreement, and the commitment by the City, THWW, and the Board to purchase renewable diesel fuel. [Filing No. 28 at 4.] Mr. Thompson stated that THWW had entered into waste water supply agreements with other cities, and that those agreements would provide a sufficient revenue stream to ensure that the City, THWW, and the Board could perform their obligations under the Agreement. [Filing No. 28 at 4.] Mr. Thompson also provided spreadsheets to OLG representatives regarding the projected revenue. [Filing No. 28 at 4.] The representations regarding the existence of waste water supply agreements with other cities were false. [Filing No. 28 at 9.] Based on Mr. Thompson's representations, Highland drafted a pro forma to present to the Terre Haute City Council. [Filing No. 28 at 4.]

In reliance on Mr. Thompson's representations to the OLG representative, OLG acquired Highland and "made substantial investments to ensure that Highland could perform its obligations under the Assignment." [Filing No. 28 at 4.] Additionally, in December 2014 OLG accepted assignment of Highland's obligations under the Plocher Contract. [Filing No. 28 at 4.] For example, OLG has insured the de-watering equipment from November 2014 through the present. [Filing No. 28 at 4.]

Highland was prepared to begin operating and maintaining services for the de-watering facility in late December 2014, but the City, THWW, and the Board never delivered waste activated sludge to the de-watering facility. [Filing No. 28 at 4-5.] Additionally, neither the City,

THWW, nor the Board have ever made payments to Highland under the Agreement. [Filing No. 28 at 5.]

Beginning in November 2014 and through March 2015, Highland and OLG representatives had discussions with Mr. Bennett, the Mayor of Terre Haute, and Mr. Thompson regarding whether the City, THWW, and the Board would honor their contractual commitments. [Filing No. 28 at 5.] Mr. Bennett and Mr. Thompson repeatedly stated that the Agreement and the Assignment were valid contracts, and that the City, THWW, and the Board would honor their obligations under them. [Filing No. 28 at 5.] Additionally, at a Terre Haute City Council meeting in February 2015, Mr. Bennett stated that the Agreement was valid and did not need any further approvals. [Filing No. 28 at 5.] In the meantime, relying on Mr. Bennett's and Mr. Thompson's representations, OLG and Highland continued to incur costs to prepare and maintain the de-watering facility. [Filing No. 28 at 5.]

In March 2015, the City began negotiating with a different company, Terre Haute Dewatering Company, LLC ("THDC"), to provide de-watering services to the City. [Filing No. 28 at 5.] The City and THDC entered into a preliminary agreement on March 30, 2015 (the "THDC Agreement"), which required THDC to pay the City a deposit of $750,000 as a "prepayment of anticipated lease payments for the City's wastewater treatment facility." [Filing No. 28 at 5.] Mr. Bennett and Robert Murray, President of the Board, signed the THDC Agreement on behalf of the City, and Mr. Murray had the understanding that the Board would later approve the THDC Agreement. [Filing No. 28 at 5.] When he learned that the THDC Agreement would not be presented to the Board for approval, Mr. Murray resigned his position with the Board. [Filing No. 28 at 6.] Mr. Murray stated that he was told the City needed the $750,000 payment from THDC

4

under the THDC Agreement to meet its payroll obligations, and that is why he signed the THDC Agreement. [Filing No. 28 at 6.]

In May 2015, the City, THWW, and the Board repudiated the Agreement and the original Assignment with Highland, claiming they were both invalid. [Filing No. 28 at 6.] A City attorney has represented that the City cannot make payments on its bonds, and cannot pay for equipment necessary for the operation of certain facilities. [Filing No. 28 at 6.] To date, the City, THWW, and the Board have not delivered any waste activated sludge to Highland as provided in the Assignment, have not made any payments due to Highland under the Assignment, and have indicated that they do not think the Assignment creates any binding obligation upon them. [Filing No. 28 at 6.] Plocher, which had contracted to provide equipment for the de-watering facility, sold that equipment to the City for less than the market value of the equipment. [Filing No. 28 at 6.]

Highland and OLG filed the original Complaint in this matter on June 9, 2015, [Filing No. 1], and the operative Amended Complaint on October 23, 2015, [Filing No. 28] in response to a Motion to Dismiss filed by the City, THWW, the Board, Mr. Bennett, and Mr. Thompson (collectively, the "Terre Haute Defendants"), [Filing No. 16]. In the Amended Complaint, Highland and OLG asserted the following claims: (1) declaratory judgment against the City, THWW, and the Board, declaring that the Agreement and Assignment are valid, legally binding contracts; (2) breach of contract against the City, THWW, and the Board; (3) quantum meruit against the City, THWW, and the Board; (4) fraud against Mr. Bennett and Mr. Thompson; (5) appointment of a receiver against the City; (6) an injunction against the Terre Haute Defendants prohibiting them from removing equipment from the de-watering facility; (7) tortious interference with contract against Plocher and THDC; and (8) tortious interference with business relationships against Plocher and THDC. [Filing No. 28 at 7-13.] The Terre Haute Defendants moved to dismiss

5

Counts 1 through 6 of the Amended Complaint, [Filing No. 32], THDC moved to dismiss Counts 7 and 8 of the Amended Complaint as against it, [Filing No. 58], and Plocher moved to dismiss Counts 7 and 8 as against it or, in the alternative, to stay the litigation and compel Highland and OLG to arbitrate their claims against Plocher, [Filing No. 60].

On May 17, 2016, the Court: (1) granted the Terre Haute Defendants' Motion to Dismiss Counts I – VI of the Amended Complaint, [Filing No. 32], and dismissed with prejudice all claims against the Terre Haute Defendants; (2) granted THDC's Motion to Dismiss Counts 7 and 8 of Plaintiffs' Amended Complaint, [Filing No. 58], and dismissed with prejudice all claims against THDC; and (3) granted Plocher's Motion to Dismiss, Alternatively to Stay, and to Compel Arbitration, [Filing No. 60], and dismissed with prejudice all claims against Plocher. [*See* Filing No. 81.] Plaintiffs have now filed the pending Motion to Alter or Amend the Judgment, [Filing No. 83], and Plocher and the Terre Haute Defendants oppose the motion, [Filing No. 85; Filing No. 86].

## II.
### STANDARD OF REVIEW

Plaintiffs move to alter or amend the judgment under Fed. R. Civ. P. 59. [*See* Filing No. 84 at 3.] Rule 59(e) allows a party to move the Court for reconsideration of a judgment within 28 days following the entry of judgment, and encompasses reconsideration of matters decided on the merits. *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174 (1989). Affording relief through granting a motion for reconsideration brought pursuant to Rule 59(e) is an "extraordinary remed[y] reserved for the exceptional case." *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008). Rule 59 motions are for the limited purpose of "correct[ing] manifest errors of law or fact or…present[ing] newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (quoting *Keene Corp. v. Int'l Fidelity Ins. Co.*, 561 F.Supp. 656 (N.D. Ill. 1982), *aff'd* 736

F.2d 388 (7th Cir. 1984)). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F.Supp. 1063, 1069 (N.D. Ill. 1997)). Additionally, a party "may not use a motion for reconsideration [under Rule 59] to introduce new evidence that could have been presented earlier." *Oto*, 224 F.3d at 606. The Court will analyze the pending motion pursuant to this standard.

### III.
#### DISCUSSION

Plaintiffs set forth two main arguments in their motion: (1) that the Court's dismissal of Plaintiffs' breach of contract and quantum meruit claims against the Terre Haute Defendants was erroneous because it was based on "unwarranted factual assumptions," [Filing No. 84 at 4-8]; and (2) that the claims against Plocher which the Court held are subject to arbitration should have been dismissed "without prejudice," instead of "with prejudice," [Filing No. 84 at 8-9]. The Court will address each argument in turn, but will discuss the breach of contract and quantum meruit claims separately.

#### A. Breach of Contract Claim

In its May 17, 2016 Order, the Court granted the Terre Haute Defendants' Motion to Dismiss Plaintiffs' breach of contract claim because Indiana law requires that a city obtain an appropriation before entering into a contract that obligates the city to pay money. *See* Ind. Code § 36-4-8-12(b). The Court emphasized that Plaintiffs alleged in the Amended Complaint that Highland entered into the Agreement relying on Mr. Thompson's representations that agreements between THWW and other cities would provide "a sufficient revenue stream to ensure the City, [THWW], and the Board could perform the Agreement." [*See* Filing No. 81 at 8-9 (quoting Filing

7

No. 28 at 4).] The Court stated that Plaintiffs' allegations "indicate that the City's, THWW's, and the Board's obligations under the Agreement were being funded by revenue from contracts with other cities, and not from an appropriation. Further, as Plaintiffs themselves allege, those revenues from other cities never materialized." [Filing No. 81 at 10.] It found that Plaintiffs had "affirmatively pled themselves out of any possibility of demonstrating that there was an appropriation to cover the City's obligations under the Agreement…." [Filing No. 81 at 10-11.] In sum, the Court found that "[t]he Agreement is invalid because Plaintiffs allege facts indicating that there was no appropriation related to the City's obligations under the Agreement…." [Filing No. 81 at 12.] Significantly, the Court also found that the Agreement was invalid because it constitutes an illegal investment contract under Ind. Code § 36-1-3-8(a)(11). [Filing No. 81 at 12-14.]

In their Motion to Alter or Amend the Judgment, Plaintiffs argue that they did not plead themselves out of their breach of contract claim because they "would not need to contradict the allegations in their complaint to prevail on their claims." [Filing No. 84 at 5.] They argue that they "did not allege that the City had no revenue from other cities or would not receive any revenue in the future," and that there is evidence of sources of funds other than tax revenues to fund the City's obligations under the Agreement – including Mr. Bennett's statement that the City would receive "two payments each for $3 million from Powerdyne," and minutes from the Board of Sanitary Commissioners' meetings indicating that "the City is hauling sludge for other municipalities" and that "the City continues to provide services to some of those municipalities." [Filing No. 84 at 5-6.] Plaintiffs argue that based on this documentary evidence, the Court should not have dismissed their breach of contract claim because "the project may still generate revenue, thereby providing a funding stream to pay contractual obligations owed to Plaintiffs." [Filing No.

8

84 at 6.] Plaintiffs assert that the Court erroneously concluded that they failed to fulfill their duty to ensure that the City took all necessary steps to enter into the contract, because "[t]he City provided Highland with detailed estimates of revenue through an organized plan to secure outside monies it would receive from other cities." [Filing No. 84 at 6-7.] They also contend that "agents of the City repeatedly stated that the Agreement was a valid contractual obligation that the City, the Utilities, and the Board would honor," and that the Court "should consider [an] opinion letter by the City's highest legal officer [stating that the Agreement complied with applicable statutes and was binding] before dismissing Plaintiffs' claims, with prejudice." [Filing No. 84 at 7.]

In their response, the Terre Haute Defendants argue that Plaintiffs ignore the fact that the breach of contract claims were also dismissed because the Court found that the Agreement was an illegal investment contract. [Filing No. 86 at 6.] The Terre Haute Defendants also argue that Plaintiffs present new facts that were available to them prior to filing the Amended Complaint, and that Plaintiffs have not presented any legal authority standing for the proposition that a prior appropriation is not needed so long as there are other sources of revenue. [Filing No. 86 at 7-9.] The Terre Haute Defendants note that the Agreement "unconditionally obligates the City to pay up to $172,000,000 for dewatering services and to pay up to $590,400,000 for diesel fuel," that "[t]he danger of public officials and boards creating a $762,000,000 liability without City Council oversight and approval is obvious," and that "[t]his is precisely why Indiana law does not permit officials or boards to create such obligations without a prior appropriation." [Filing No. 86 at 11-12.] The Terre Haute Defendants contend that Highland's reliance on Sanitary Board meeting minutes is misplaced because the Sanitary Board did not approve the Agreement, the Sanitary District has exclusive control over its revenue and that revenue cannot be used to satisfy an obligation created by a contract to which the Sanitary District is not a party, and Plaintiffs could

9

have raised the issue of Sanitary District approval in the Amended Complaint but did not. [Filing No. 86 at 12-14.] The Terre Haute Defendants argue that Highland could not rely on the City's mistaken belief that no appropriation was necessary, as it did not plead the facts it now relies upon for that argument in its Amended Complaint, did not make that argument in response to the Terre Haute Defendants' Motion to Dismiss, and could not rely on the City's counsel's representations regarding the validity of the Agreement. [Filing No. 86 at 14-16.]

On reply, Plaintiffs again argue that they fulfilled their duty to ensure that the City had taken the proper steps to be able to enter into the Agreement, including relying upon representations from the City attorney. [Filing No. 88 at 5-6.] They also assert that any amount in damages they seek is significantly less than the numbers Defendants cite because Defendants' numbers include amounts owed for the purchase of diesel fuel, which Plaintiffs never contracted to provide. [Filing No. 88 at 6.] Finally, they state that they "do not seek to use Defendants' misconduct to obtain taxpayer money unfairly[, but rather] seek to recover from Defendants the money that Plaintiffs spent providing services to Defendants and that are resulting in revenue to Defendants." [Filing No. 88 at 7.]

Plaintiffs essentially argue that the Court should not have dismissed their breach of contract claim because evidence not previously presented to the Court indicates that there were other sources of revenue to fund the City's obligations under the Agreement, and that Plaintiffs justifiably relied upon representations by the City that it could fulfill those obligations. There are two main problems with Plaintiffs' arguments. First, a motion brought under Rule 59 cannot be based on evidence that could have been presented during the pendency of the motion at issue. *See Caisse Nationale de Credit Asricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269-70 (7th Cir. 1996) (a motion for reconsideration cannot "be employed as a vehicle to introduce new evidence that could

have been adduced during the pendency of the…motion"). The evidence that Plaintiffs rely upon – media reports about different sources of income to fund the City's obligations, and minutes from Board of Sanitary Commissioners' meetings relating to the same issue – could have been submitted with, or referred to in, the Amended Complaint. Plaintiffs chose not to discuss that evidence until now, and it is well-settled that basing a Rule 59 motion on evidence that is not "newly discovered" is improper. *See, e.g.*, *Oto*, 224 F.3d at 606.

Second, even if it were proper for the Court to consider evidence that Plaintiffs could have submitted or referred to, but did not, that evidence does not alter the Court's analysis. Plaintiffs miss the point of Ind. Code § 36-4-8-12, which is to protect the public by preventing public officials from entering into contracts which obligate the city to pay amounts without a prior appropriation. Ind. Code § 36-4-8-12(b) ("a city department, officer, or employee may not obligate the city to any extent beyond the amount of money appropriated for that department, officer, or employee"). It is the obligation of the City which causes the issue – an obligation which the legislative branch must approve, and which was not approved here. Whether or not the City had other revenue sources which could have funded its obligations under the Agreement is irrelevant. There must have been an appropriation to approve expenditure of that revenue on the City's obligations under the Agreement. Additionally, as the Court discussed in its May 17, 2016 Order, a private party contracting with a municipality has a duty to ensure that the municipality has taken the necessary steps to enter into the contract. [*See* Filing No. 81 at 11 (citing *Cablevision of Chicago v. Colby Cable Corp.*, 417 N.E.2d 349, 355-56 (Ind. Ct. App. 1981); *Lohrig v. Rochat*, 169 N.E. 77, 81 (Ind. Ct. App. 1929)).] Plaintiffs discuss representations from the City's corporation counsel stating that the Agreement was binding and that all statutory requirements were followed. [*See* Filing No. 84 at 7.] But Plaintiffs do not point to any legal authority

11

supporting the proposition that such a representation is enough to ensure that the City took the necessary steps to the enter into the Agreement. Any appropriation would be a matter of public record, and Plaintiffs neither allege that they did their own investigation nor, tellingly, that such an appropriation took place.[3] Indeed, the additional evidence that Plaintiffs submit underscores that there was no such appropriation.

Finally, Plaintiffs completely ignore the Court's finding in its May 17, 2016 Order that the Agreement is an investment contract that the City is prohibited from entering into under Indiana statute. [*See* Filing No. 81 at 12-14 (discussing Ind. Code § 36-1-3-5, which provides that "a unit may exercise any power it has to the extent that the power: (1) is not expressly denied by the Indiana Constitution or by statute; and (2) is not expressly granted to another entity," and Ind. Code § 36-1-3-8, which enumerates certain powers that are exceptions to the general grants of power, including "[t]he power to invest money, except as expressly granted by statute").] This was an independent basis for the Court's finding that the Agreement was invalid, and even if Plaintiffs have shown that the Agreement was not invalid for lack of an appropriation – which they have not – they fail to address why the Court should reconsider its decision that the Agreement is an invalid investment contract.

In sum, the Court denies Plaintiffs' request to alter or amend the judgment on their breach of contract claim because Plaintiffs rely on evidence that they could have relied upon in their Amended Complaint and arguments that they could have presented in response to the Terre Haute

---

[3] Plaintiffs also argue that "the City's outside legal counsel…stated during a meeting of the Board of Sanitary Commissioners that contracts involving the Waste Water Treatment Plant require only the approval of the Sanitary Board." [Filing No. 84 at 7.] This argument is unavailing because it was raised for the first time in connection with the pending motion and, again, it does not indicate that there was an appropriation as required by Ind. Code § 36-4-8-12.

Defendants' Motion to Dismiss and, even if the Court were to consider the new evidence and arguments, they do not change the Court's analysis.

### B. Quantum Meruit Claim

The Court found in its May 17, 2016 Order that Plaintiffs' quantum meruit claim failed, stating "[Indiana] courts have been particularly unsolicitous of estoppel and laches arguments in cases where the unauthorized acts of public officials on some level implicate government spending powers." [Filing No. 81 at 15 (quoting *Peoples State Bank v. Benton Tp. of Monroe County*, 28 N.E.3d 317, 326 (Ind. Ct. App. 2015)).] It found that although a quantum meruit claim can succeed when a public entity is involved if the unauthorized expenditure of taxpayers' money is not at issue, the Agreement here implicated taxpayer funds. [Filing No. 81 at 15-16.]

In support of their motion, Plaintiffs rely on evidence that the City was receiving revenue from a contract with Powerdyne and from certain sludge hauling contracts to argue that the Agreement did not implicate taxpayer funds and, accordingly, their quantum meruit claim should not have been dismissed. [Filing No. 84 at 7-8.]

In response, the Terre Haute Defendants argue that Plaintiffs do not address the fact that the Agreement put public funds at risk, and that even revenue implicates public funds because Indiana statute provides that "'[p]ublic funds' means all fees and funds of whatever kind or character coming into the possession of any public officer by virtue of that office." [Filing No. 86 at 18 (quoting Ind. Code § 5-13-4-20 and Ind. Code § 36-9-25-33(b)).] The Terre Haute Defendants again note that the funds Plaintiffs are referring to are Sanitary District funds, and cannot be used to satisfy the City's obligations under the Agreement. [Filing No. 86 at 18.] Finally, the Terre Haute Defendants contend that Highland seeks a "double recovery" through its quantum meruit claim because "[i]t seeks the difference between the price the City paid for the

13

equipment and the invoice price in the arbitration, and it seeks that same amount under its quantum meruit claim in this case," and "since such a recovery in this case would come from the City's taxpayers, Highland must assert that claim in the arbitration, which is exactly what it is doing." [Filing No. 86 at 19.]

On reply, Plaintiffs argue that Defendants and the Court confuse "taxpayer funds" with "public funds," that the Court found quantum meruit claims are barred when "taxpayer funds" are implicated, and that this case involves "public funds." [Filing No. 88 at 2-3.] Plaintiffs assert that they could not have raised this argument in response to the Terre Haute Defendants' Motion to Dismiss because Defendants did not make that argument in connection with their motion. Plaintiffs contend that the Court can consider other sources of non-tax revenue since they are responding to the Court's finding that the Agreement implicated taxpayer funds. [Filing No. 88 at 4.] Plaintiffs do not address the Terre Haute Defendants' argument that Sanitary District funds cannot be used to satisfy the City's obligations under the Agreement, but rather state that "Defendants do not explain how the de-watering project is moving forward unless [the City is] using that money." [Filing No. 88 at 4.] Finally, Plaintiffs assert that any argument regarding a double recovery due to the arbitration "can be decided only upon a factual record, not a motion to dismiss." [Filing No. 88 at 4.]

Similar to the breach of contract claim, Plaintiffs base their arguments on evidence not presented with or referred to in the Amended Complaint, which was available at that time. The Court rejects the argument that Plaintiffs did not discuss evidence of other "public funds" because the Terre Haute Defendants did not raise that argument. The issue of how the City planned to satisfy its obligations under the Agreement has always been central to this lawsuit, and the Terre

Haute Defendants specifically argued in their Motion to Dismiss that the quantum meruit claim should be dismissed because the Agreement "puts public funds at risk." [Filing No. 33 at 16.]

In any event, the evidence Plaintiffs rely on does not indicate that there was another source for the City's obligations, such that even "public" funds were not implicated. The Court notes that the other revenue sources Plaintiffs primarily rely upon were amounts received by the Sanitary District for sludge processing, but that revenue belongs to the Sanitary District – who is not a party to the Agreement – and cannot be used by the City to fund its obligations under the Agreement. *See* Ind. Code § 36-9-25-33(b) ("money collected for or belonging to the sanitary district belongs to the sanitary district, and not to any city or town in the sanitary district"); Ind. Code § 36-9-25-37 (the Sanitary Board "has complete and exclusive authority to expend the money for the purposes provided"). Plaintiffs essentially argue that the City must be using that money to continue with the de-watering project with THDC, but this speculation is not enough to show that the Agreement does not implicate public funds.[4]

As with Plaintiffs' breach of contract claim, the Court denies Plaintiffs' Motion to Alter or Amend the Judgment as it relates to the quantum meruit claim because Plaintiffs submit evidence that they could have submitted with their Amended Complaint and rely upon arguments that they could have made in response to the Terre Haute Defendants' Motion to Dismiss, and because that evidence does not change the Court's analysis in any event.

---

[4] Because it has found that altering or amending the judgment as to Plaintiffs' quantum meruit claim is not warranted, the Court need not consider the Terre Haute Defendants' additional argument that Plaintiffs seek double recovery through their quantum meruit claim due to the pending arbitration. [*See* Filing No. 86 at 19.]

### C. Claims Against Plocher

In its May 17, 2016 Order, the Court found that Plaintiffs' claims against Plocher – for tortious interference with contract and tortious interference with business relationships – fell within the arbitration provision contained in the Plocher Contract because the claims "arise from, or are in connection with, the Plocher Contract." [Filing No. 81 at 28-32.] The Court dismissed the claims with prejudice, noting that Plaintiffs had already amended their Complaint once in response to the Terre Haute Defendants' first Motion to Dismiss, chose not to exercise their right to amend again as a matter of course in response to the subsequent Motions to Dismiss, and had not given any indication that they could successfully amend their complaint to cure the defects the Court had identified. [Filing No. 81 at 32-33.]

Plaintiffs argue that the Court's dismissal of their claims against Plocher should have been without prejudice, and note that "the Court's intent in dismissing Plaintiffs' claims against Plocher is to require Plaintiffs to pursue their claims against Plocher in arbitration" and that they "have recently again scrutinized the Agreement in which they and Plocher allegedly agreed to arbitrate" and "may move the arbitral panel to dismiss the arbitration in full." [Filing No. 84 at 8.]

Plocher responds that the cases Plaintiffs rely upon for their argument that dismissal of the claims subject to arbitration should have been without prejudice do not stand for that proposition. [Filing No. 85 at 3-4.] Plocher also notes that "[OLG] would still be able to file an action to enforce an arbitration award because that claim is not part of this case (the only claims alleged against Plocher were for tortious interference), and of course, a dismissal with prejudice appl[i]es only to existing claims and those claims which could be asserted at this time. An action challenging any arbitration award does not and could not exist at this time as the arbitration is ongoing." [Filing No. 85 at 4-5.]

16

Plaintiffs reply that because a motion to dismiss based on the argument that the claim is subject to arbitration is treated as a motion to dismiss for improper venue, dismissal should be without prejudice. [Filing No. 87 at 2-3.]

As the Court stated in its May 17, 2016 Order, a motion to dismiss based on an existing arbitration agreement is considered a motion to dismiss under Fed. R. Civ. P. 12(b)(3) for improper venue. [Filing No. 81 at 29.] Plaintiffs are correct that claims dismissed for improper venue should be dismissed without prejudice. *See, e.g.*, *Johnson v. Western & Southern Life Ins. Co.*, 598 Fed. Appx. 454, 456 (7th Cir. 2015) (where defendant moved to compel arbitration and to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3), dismissal was without prejudice because there was no "adjudication on the merits"); *In re IFC Credit Corp.*, 663 F.3d 315, 320 (7th Cir. 2011) ("dismissal for want of jurisdiction, not being an adjudication on the merits, is without prejudice"). Accordingly, the Court grants Plaintiffs' Motion to Alter or Amend the Judgment to the extent that Plaintiffs' claims against Plocher are dismissed without prejudice, rather than with prejudice.[5]

### IV.
#### CONCLUSION

For the foregoing reasons, the Court **DENIES IN PART** Plaintiffs' Motion to Alter or Amend the Judgment, [Filing No. 83], to the extent that it declines to alter or amend its findings or judgment regarding Plaintiffs' breach of contract and quantum meruit claims against the Terre Haute Defendants. However, the Court **GRANTS IN PART** Plaintiffs' Motion to Alter or Amend the Judgment, [Filing No. 83], to the extent that it alters the judgment such that the dismissal of

---

[5] As Plocher concedes, even if the dismissal of OLG's claims against Plocher was with prejudice, OLG would have been free to file an action to enforce any arbitration award. [*See* Filing No. 85 at 4-5.]

Plaintiffs' claims against Plocher is **WITHOUT PREJUDICE**. An Amended Judgment shall issue accordingly.

Date: August 10, 2016

*Jane Magnus-Stinson*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**